UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

     Plaintiff,

v.                                                          Case No. 20-20327
                                                            Honorable Victoria A. Roberts

TERRANCE LOVE,

     Defendants.

_____/

## ORDER DENYING DEFENDANT'S MOTION TO DISMISS COUNT ONE OF THE INDICTMENT [ECF No. 28]

### I.    INTRODUCTION

Defendant moves to dismiss Count One of his indictment -- receipt of a firearm by a person under indictment, 18 U.S.C. § 922(n).  Mr. Love has not been convicted of a felony.  The question before the Court is whether § 922(n) is constitutional on its face and as applied to Mr. Love, in light of the Supreme Court holding in *District of Columbia v. Heller* that firearm possession is an individual right.  The Court concludes that § 922(n) is constitutional in all respects and **DENIES** Defendant's Motion to Dismiss.

### II.    BACKGROUND

On October 18, 2019, law enforcement arrested Mr. Love during the execution of a search warrant at a known drug house/apartment in Mt.

1

Hope, West Virginia.  During the search, officers located Mr. Love in a

bedroom with two other men.  Officers recovered a handgun registered to

Mr. Love.  In the same bedroom, officers found heroin, digital scales,

unused baggies, and over $5,000 in U.S. Currency.  Officers found

methamphetamine in another part of the apartment.

On January 17, 2020, a Grand Jury at the Raleigh County Circuit

Court in West Virginia indicted Mr. Love for three felony offenses resulting

from the search.  The Grand Jury charged him with possession with the

intent to deliver heroin; possession with the intent to deliver

methamphetamine; and felony conspiracy.  (Case# 20-F-88-D).  These

three offenses are all punishable by a term of prison exceeding one year.

On February 25, 2020, the Raleigh County Circuit Court arraigned

Mr. Love on the indictment.  He signed a pre-trial release form which

prohibited him from possessing or using a firearm.  On February 26, 2020,

Mr. Love returned to Michigan and went to a licensed gun store where he

purchased a Century Arms, Mini Draco, 7.62 caliber semi-automatic

firearm.  Mr. Love filled out a Firearm Transaction Record (ATF Form 4473)

which asked: "Are you under indictment or information in any court for a

felony, or any other crime for which a judge could have imprisoned you for

2

more than one year, even if you received a shorter sentence including

probation?"  Mr. Love answered "no."

Mr. Love completed the transaction on March 4, 2020, when he

picked up the firearm from the gun store following a background check.  He

has a valid concealed pistol license and is the lawful owner of three other

registered firearms.  The arrest for the West Virginia case on October 18,

2019, was Mr. Love's first arrest.  He has no prior convictions.

On May 23, 2020, officers of the Detroit Police Department

responded to a domestic violence dispute at a residence.  Upon arrival,

they discovered that Mr. Love was there to retrieve clothing and other

belongings, and got into a fight with the resident.  Mr. Love punched her in

the mouth.  Officers arrested him for assault and battery, but the victim did

not press charges.  The police released Mr. Love the following day.

On July 29, 2020, the U.S. government indicted Mr. Love for his

purchase of the Mini Draco firearm on February 26.  The indictment

consisted of two counts: receipt of a firearm by a person under indictment,

in violation of 18 U.S.C. § 992(n) (Count One); and making a false

statement during the purchase of a firearm, in violation of 18 U.S.C. §

922(a)(6) (Count Two).

3

III.   **ANALYSIS**

Mr. Love moves to dismiss Count One of his indictment – receiving a firearm in violation of 18 U.S.C. § 922(n).  Section 922(n) reads as follows:

> It shall be unlawful for any person who is under indictment for a crime punishable by imprisonment for a term exceeding one year to ship or transport in interstate or foreign commerce any firearm or ammunition or receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce.

Mr. Love says the statute is unconstitutional on its face, and unconstitutional as applied to him, because it deprives him of his ability to keep arms in his home for self-defense.  He also argues that the statute exceeds Congress's power under the Commerce Clause.

The crux of Mr. Love's argument flows from the Supreme Court's decision in *District of* Columbia v. *Heller*, 554 U.S. 570 (2008).  In *Heller*, the Supreme Court struck down a District of Columbia Code that placed restrictive limits on citizens' ability to possess a registered firearm.  *Heller* held the Second Amendment confers on an individual the right to keep and bear arms, specifically for the purposes of self-defense.  *Heller*, 554 U.S. at 628; *see also McDonald v. City of Chicago*, 561 U.S. 742, 767 (2010) (holding that the Fourteenth Amendment makes the Second Amendment right to keep and bear arms for the purpose of self-defense applicable to the states).

4

A. <u>18 U.S.C. § 922(n) Is Constitutional on its Face</u>

Federal courts analyzed numerous Second Amendment challenges following the *Heller* decision.  Many of these cases present challenges to various subsections of 18 U.S.C. § 922.  Neither the Supreme Court nor any appellate court has assessed the constitutionality of the statute at issue, § 922(n), *post-Heller*.  In striking down the District of Columbia Code, *Heller* did not provide exact guidance on how restrictive a law can be without overstepping the constitutional threshold.  *Heller* provided a non-exhaustive list of what type of restrictions are presumed to be constitutional:

> "The Court's opinion should not be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill, or laws forbidding the carrying of firearms in sensitive places such as schools and government buildings, or laws imposing conditions and qualifications on the commercial sale of arms."  *Heller*, 554 U.S. at 626-27.

§ 922(n) does not fit neatly in any of the categories in *Heller's* list.

Appellate and district courts have identified appropriate mechanisms to analyze Second Amendment challenges in the wake of *Heller*.  *U.S. v. Greeno*, 679 F.3d 510, 520 (6th Cir. 2012).  Since *Heller*, most appellate courts apply a two-prong test to assess the constitutionality of federal firearm statutes.  The questions to ask are: (1) does the challenged law

5

burden conduct that falls within the scope of the Second Amendment right? Only those acts that impose such a burden merit heightened scrutiny; and (2) does the statute survive scrutiny? *See Greeno*, 679 F.3d at 518; *United States v. Marzzarella*, 614 F.3d 85, 89 (3d Cir. 2010); *United States v. Reese*, 627 F.3d 792, 800 (10th Cir. 2010); *United States v. Laurent*, 861 F.Supp.2d 71 (E.D.N.Y. Dec.2, 2011) (utilizing the two-prong test to analyze the constitutionality of § 922(n)).

## I.

The first prong is an inquiry into whether § 922(n) burdens conduct that falls within the scope of the Second Amendment right as historically understood.  *Greeno*, 679 F.3d at 518 (citing *U.S. v. Chester*, 628 F.3d 673, 680 (4th Cir. 2010)).  "The core right recognized in Heller is 'the right of law-abiding, responsible citizens to use arms in defense of hearth and home.'"  *Id*. at 519 (quoting *Heller*, 554 U.S. at 635).

Mr. Love argues that this statute burdens his Second Amendment right because his underlying indictment is based solely on probable cause and mere allegations.  Unless convicted, Mr. Love remains a law-abiding citizen.

Neither party contends that Mr. Love purchased the firearm in furtherance of an unlawful purpose.  And the fact of the underlying

6

indictment does not make him a criminal.  Individuals charged with crimes are entitled to have their guilt or innocence determined based on evidence presented at trial, not on the grounds of "suspicion, *indictment,* continued custody or other circumstances not adduced as proof at trial."  *Taylor v. Kentucky*, 436 U.S. 478, 485 (1978).  The purchase of a firearm by a presumably innocent individual falls within the Second Amendment right as historically understood.

This reasoning aligns with the reasoning of the first district court to consider the constitutionality of § 922(n) following *Heller*, *United States v. Laurent*, 861 F.Supp.2d (E.D.N.Y. Dec. 2, 2011).  The U.S. government indicted the defendant in *Laurent* for violating § 922(n) and the court applied the same two-prong test.  As *Laurent* explained, unless the defendant already owned a firearm prior to the underlying indictment, § 922(n) does deny him the ability to bear arms for self-defense, a right afforded to all law-abiding citizens.  *Id.* at 102; *see also Heller*, 554 U.S. at 635.  This denial may be temporary in nature, but even the slightest denial is a burden.

Based on *Heller* and its progeny, the Court finds that § 922(n) does impose a substantial burden on Mr. Love's Second Amendment rights.

**II.**

7

But it does not follow that Mr. Love succeeds on his facial challenge to § 922(n) because it substantially burdens his Second Amendment rights. Instead, the Court applies the second prong of the test.  Does the statute survive scrutiny? *Heller* held that courts should apply a heightened level of scrutiny to Second Amendment challenges but did not precisely state whether that scrutiny should be intermediate or strict.

In determining which level of scrutiny to apply, the Court must "analyze 'the strength of the government's justification for restricting or regulating the exercise of Second Amendment rights.'" *Stimmel v. Sessions*, 879 F.3d 198, 207 (6th Cir. 2018) (quoting *Greeno*, 679 F.3d at 518).

Mr. Love urges the Court to apply strict scrutiny in examining § 922(n) because it severely burdens the right of law-abiding citizens to receive firearms for personal protection.  Mr. Love concedes that the Sixth Circuit applied intermediate scrutiny in two relevant cases involving Second Amendment challenges.  One case involved a challenge to § 922(g)(1), which prohibits firearm possession by those who have been convicted for a crime punishable by imprisonment for a term exceeding one year. *See Stimmel*, 879 F.3d at 207 (applying intermediate scrutiny).  The other case involved a challenge to § 922(g)(4), which prohibits firearm possession by

8

those who have been adjudicated to be "mentally defective" or who have been committed to mental institutions. *Tyler v. Hillsdale*, 837 F.3d 678, 692 (6th Cir. 2016) (applying intermediate scrutiny).

Mr. Love attempts to distinguish his case from *Stimmel and Tyler* where both defendants had been found to be a danger to others.  Mr. Love has not been adjudicated to be a danger.

The Sixth Circuit and many other appellate courts apply intermediate scrutiny to Second Amendment challenges.  *See United States v. Marzzarella*, 614 F.3d 85, 89 (3d Cir. 2010) (upholding 18 U.S.C. § 922(k)); *United States v. Reese*, 627 F.3d at 800 (upholding § 922(g)(8)); *United States v. Skoien*, 614 F.3d at 641 (upholding 18 U.S.C. § 922(g)(9)).

While the Court agrees with Mr. Love that he is presumably innocent unless found guilty, the Court does not see a need to deviate from the Sixth Circuit and other appellate courts' application of intermediate scrutiny to federal firearm regulations.  As persuasively explained in *Laurent*, § 922(n) applies only to a narrow class of people, not the public at large. The statute merely prohibits an individual under indictment from shipping, transporting, or receiving a firearm for a temporary period of time.  Someone indicted for violating § 922(n) is still permitted to own a firearm purchased prior to the

indictment. *Laurent*, 861 F.Supp.2d at 105.  Due to the limited nature of §

922(n), intermediate scrutiny is appropriate for the second prong.

Under intermediate scrutiny, the government must "state a

'significant, substantial, or important' objective and establish 'a reasonable

fit' between the challenged restriction and that objective." *Stimmel*, 879

F.3d at 207 (quoting *Tyler*, 837 F.3d at 693).

Mr. Love concedes that the government interest is compelling.  This

concession would end the inquiry, but the Court must find that the interest

is 'significant, substantial, or important.'  The government argues that §

922(n) serves a significant government interest by protecting public safety.

The government also believes that § 922(n) serves to protect Pretrial

Services officers who supervise defendants who are released on bond.

The Court is skeptical of this latter belief.  The statute does not prohibit

those under indictment from possessing firearms, therefore Pretrial

Services officers could still potentially be harmed by a firearm lawfully

owned by a defendant. Nevertheless, Congress has found that individuals

under indictment pose a greater likelihood to misuse firearms.  *United

States v. Graves*, 554 F.2d 65, 72 (3rd Cir. 1977); *see also United States v.

Munsterman*, 177 F.3d 1139, 1142 (9th Cir. 1999).  Prohibiting such

individuals from receiving new firearms serves the substantial interest to ensure public safety.

There is a reasonable fit between § 922(n) and ensuring public safety.  This statute is less restrictive than other subsections of 18 U.S.C. § 922, which completely bar gun ownership.  *Laurent*, 861 F.Supp.2d at 104. The Sixth Circuit and other appellate courts have upheld these stricter statutes under intermediate scrutiny.  The Court does believe there is a difference between this statute and other subsections of § 922, such as (g)(1) which bars felons from possessing a firearm.  One under indictment is still presumably innocent, but this difference does not raise § 922(n) to the level of strict scrutiny.  Moreover, the statute in question has been upheld under intermediate scrutiny by four district courts which have analyzed it.  *See U.S. v. Call*, 874 F.Supp.2d 969 (D. Nev. Jun. 7, 2012) (upholding § 922(n) under intermediate scrutiny); *U.S. v. Khatib*, 2012 WL 6086862 (E.D. Wis. Dec. 6, 2012) (same); *U.S. v. Thomas*, 2021 WL 3674123 (N.D. Ga. May 17, 2021) (same).

### B. 18 U.S.C. § 922(n) Is Constitutional as Applied to Mr. Love

Congress reached the conclusion that those under indictment pose a greater likelihood to engage in further violence than others and should not be allowed to ship, transport, or receive a firearm. Mr. Love presents a

compelling argument in that he does not have a criminal history and the underlying indictment is for a nonviolent offense. Does the government achieve its objective of protecting the public by prohibiting someone like Mr. Love from purchasing a firearm?

This case shares many similarities with *U.S. v. Call*. Like Mr. Love, the defendant in *Call* was not charged with a violent crime, nor did he have a prior criminal history of violence or crimes involving firearms. However, the court still held that the statute was constitutional as applied to him because the prohibition in § 922(n) was relevant to his underlying criminal charges.

The defendant in *Call* was initially charged in a criminal complaint with conspiracy to defraud the U.S. government in violation of 18 U.S.C. § 371. *Call,* 874 F.Supp.2d at 971. The defendant was the operator of a gun store. It was alleged that he received and sold, or offered to sell, stolen U.S. military equipment including body armor and firearm accessories. Based on § 922(n), the government requested that the defendant's pre-trial release be modified to prohibit him from possessing firearms and ammunition and operating a store that sells ammunition. *Id*. at 972.

The defendant challenged the constitutionality of § 922(n) both on its face and as applied to him. The *Call* court stated, "it is not uncommon for

12

courts to impose conditions of pretrial release that attempt to prevent or reduce the risk that the defendant will engage in similar or related criminal activities to those charged in the complaint or indictment." *Id*. at 979.  The court ultimately held that the § 922(n) prohibition on the defendant was reasonable and consistent with the purpose of the statute.  Although not binding, the Court finds this analysis persuasive.

There is a reasonable belief that there is a nexus between drugs and guns. 18 U.S.C. § 922(q)(1)(A)-(B) supports this conclusion: "[C]rime, particularly crime involving drugs and guns, is a pervasive, nationwide problem; Crime at the local level is exacerbated by the interstate movement of drugs, guns, and criminal gangs."  As the government cites in its brief, "drugs and guns are a dangerous combination."  *Smith v. United States*, 508 U.S. 223, 240 (1993).

In analyzing whether the statute satisfies its objective as applied to Mr. Love, it is important to look at the totality of the circumstances.  Mr. Love contends that the Court should not consider his assault and battery arrest on May 23, 2020, when he allegedly punched a female in the mouth, but rather, should focus on "whether there is evidence of his dangerousness at the time he became a prohibited person."

13

The Court disagrees with Mr. Love's argument.  It is relevant to assess his conduct both before and after the underlying indictment.  The *Laurent* court did precisely this.  Eight months after his initial state indictment, Laurent was arrested for robbing someone at gunpoint.  He was subsequently indicted, federally, for violating 18 U.S.C. § 922(n).  *Laurent* ultimately held, "the fact that Laurent was charged with the instant crime because he apparently committed a crime of violence while under indictment undermines any claim he might have that § 922(n) is not substantially related to preventing him from engaging in further violence."

Based on Mr. Love's argument, the *Laurent* court should not have considered the armed robbery because it occurred after his original indictment.  The Court struggles to understand why the inquiry should end at the underlying indictment, particularly since the Court examines the totality of the circumstances.  The arrest for assault and battery is relevant to such an examination.

 Perhaps more alarming is that the officers who responded to the domestic violence call recovered Mr. Love's newly purchased firearm from his car.  It is concerning that he was involved in an alleged domestic violence incident with a firearm so handy in his car parked outside the

victim's home.  This appears to be conduct Congress intended to curtail when enacting § 922(n).

In analyzing the totality of the circumstances, the Court finds that the statute is constitutional as applied to Mr. Love.

### C. **18 U.S.C. § 922(n) does not exceed Congress's power under the Commerce Clause**

Mr. Love concedes in his motion that the Court is bound by the Sixth Circuit's decisions which hold that conduct proscribed by 18 U.S.C. § 922 does not violate the Commerce Clause.

The Sixth Circuit has consistently upheld § 922 subsections as a valid exercise of Congress's authority to regulate interstate and foreign commerce.  *See*, e.g., *United States v.  Beuckelaere*, 91 F.3d 781, 784 (6th Cir. 1996) (upholding § 922(o)); *United States v. Napier*, 233 F.3d 394, 401–402 (6th Cir. 2000) (upholding § 922(g)(8)); *United States v. Rose*, 522 F.3d 710, 717–718 (6th Cir. 2008) (upholding § 922(d)(1)); *United States v. Bacon*, 884 F.3d 605, 611 (6th Cir. 2018) (upholding § 922(d)(1)).

§ 922(n) contains a jurisdiction element.  The only way an individual can violate the statute is if the ammunition or firearm traveled through interstate commerce at some point.  This interstate nexus falls squarely within Congress's power under the Commerce Clause.

### IV.   **CONCLUSION**

18 U.S.C. § 922(n) is not unconstitutional on its face.  Further, its application to Mr. Love does not violate his rights under the Second Amendment.

The Court **DENIES** Defendant's Motion to Dismiss Count One.


**IT IS ORDERED.**

<div style="margin-left: 50%;">

s/Victoria A. Roberts
Victoria A. Roberts
United States District Judge

</div>

Dated:  December 3, 2021